UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TAP PHARMACEUTICAL PRODUCTS, INC., TAKEDA CHEMICAL INDUSTRIES, LTD, and WAKO PURE CHEMICAL INDUSTRIES, LTD., <br><br> Plaintiffs, <br><br> v. <br><br> ATRIX LABORATORIES, INC. and SANOFI-SYNTHETICS, INC., <br><br> Defendants. | No. 03 C 7822 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

On November 3, 2003, Plaintiffs Tap Pharmaceutical Products Inc. ("TAP"), Takeda Chemical Industries, Ltd. ("Takeda"), and Wako Pure Chemical Industries, Ltd. ("Wako") filed suit against Defendants Atrix Laboratories, Inc. ("Atrix") and Sanofi-Synthelabo, Inc. ("Sanofi"), alleging infringement of United States Patent No. 4,728,721 ("721 patent").[1] Prior to filing this suit, Plaintiffs successfully pursued a similar claim against Oakwood Laboratories, L.L.C. ("Oakwood") who then requested reexamination of the '721 patent by the Patent and Trademark Office ("PTO"). I stayed this litigation during the pendency of the PTO's reexamination. On October 5, 2004, the PTO finished its reexamination and found that the '721 patent was valid. With those proceedings completed, I lifted the stay.

Since the beginning of the case, TAP has argued, for a variety of reasons – chief among them being the '721 patent will expire on May 1, 2006 and leave TAP without an injunctive

---

[1] Takeda and Wako are joint owners of the '721 patent and TAP is their exclusive licensee.

remedy, that this case should be expedited. Atrix opposes any such expedition and argues that, based on the Uruguay Round Agreements Act ("URAA"), codified as 35 U.S.C. § 154, TAP is no longer entitled to seek an injunction because the '721 patent has reached the Delta period of its patent term.

The URAA, which was signed into law on December 8, 1994, extended the terms of U.S. patents to twenty years from the date of filing, effective for all patents issuing on applications filed on or after June 8, 1995. 35 U.S.C. § 154(a). In addition, the URAA established the term of previously filed patents to the greater of 20 years from the filing date or 17 years from the grant date. Congress gave this extension to make U.S. patent terms more consistent with those of other countries. Realizing that this created a somewhat unexpected extension in the terms of certain preexisting patents, Congress limited the remedies available to patent infringement plaintiffs during the extended or so called Delta period. For previously existing patents and patents filed before June 8, 1995, Section 154(c) provides:

> *(c) Continuation.--*
> *(1) Determination.–* The term of a patent that is in force on or that results from an application filed before the date that is 6 months after the date of the enactment of the [URAA] shall be the greater of the 20-year term as provided in subsection (a), or 17 years from the grant
> *(2) Remedies.–* The remedies of section 283, 284, and 285 of this title shall not apply to acts which–
> > (A) were commenced or for which substantial investment was made before the date that is 6 months after the date of the enactment of the [URAA] and
> > (B) became infringing by reason of paragraph (1)

35 U.S.C. § 154(c)

Atrix argues that § 154(c)(2)'s prohibition against certain remedies, including injunctive relief, should apply to TAP since the '721 patent has recently entered into its Delta period. TAP

2

claims, however, that the prohibitions of § 154(c)(2) do not apply because Atrix cannot show either that it made substantial investment in or use of the infringing technology before June 8, 1995, or that its acts became infringing because of the enactment of § 154(c). TAP argues that Atrix cannot show that it made substantial investment in and or use of its Eligard products before June 8, 1995. Specifically, TAP alleges that Atrix made only minimal efforts, about $45,000 worth, to develop its Eligard technology before July, 1995 and that it didn't manufacture or sell its Eligard products until May, 2002. While Atrix does not dispute these assertions about its Eligard products, it does argue that they are irrelevant. Atrix argues that I should not limit my consideration of its investment in or use of the allegedly infringing polymer technology to its Eligard products but should, instead, consider its investment and use across all of its products. Given that the '721 patent deals only with a polymer designed for drug delivery and not with drug specific applications, I agree with Atrix.

Atrix claims to have made its initial investment in the allegedly infringing polymer technology in 1992 when it purchased the technology from the Southern Research Institute for $4.5M. Atrix claims to have also invested a subsequent $5.8M and $6.6M in the years 1993 and 1994 respectively, yielding a total pre-1995 investment of $16.9M. Atrix further alleges that it used the accused polymer system before June 1995 to develop other time released products. For the purposes of this inquiry, Atrix has made a sufficient showing of substantial investment in and use of the accused technology.[2]

---

[2]TAP argues that Atrix has not presented sufficient facts to show that the polymer technology it was investing in and using did in fact infringe the '721 patent. Since we are only inquiring into the probability that § 154(c) would apply in this case, I am taking Atrix at their word and assuming, for these purposes, that the investment was directed, at least in part, toward the accused technology.

TAP also argues that § 154(c) does not apply because Atrix cannot show that its acts became infringing because of the patent term extensions provisions of § 154(c). Section 154(c)(2) states explicitly that the certain remedies, including an injuction, "shall not apply to acts which – (A) were commenced or for which substantial investment was made before" the six months prior to the URAA's enactment and which "(B) became infringing by reasons of paragraph (1)." 35 U.S.C. 154(c)(2). A plain reading of this provision indicates that it applies only to defendants whose acts became infringing because the plaintiff's patent term was extended by the URAA or whose investments were made in reliance on the original patent term. This reading is supported by a Senate Report describing the URAA in the context of considering another bill:

> A special provision was inserted into the URAA that, in effect, immunized from infringement those who had commenced certain acts or made 'substantial investment' in reliance [on] the patent expiration....

S. Rep. No. 104-349 at *3, WL 566907 (1996).

This reading is also consistent with statements made by the Federal Circuit in *DuPont Merck Pharm. Co. v. Bristol,* 62 F.3d 1397 (Fed. Cir. 1995). The Federal Circuit reasoned that § 154(c) "creates *a limited safe harbor* for persons who have commenced acts, or made substantial investment toward commission of acts, before June 8, 1995, *which became infringing because of the extension* of the patent period. *Id.* at 1399 (emphasis added). For these reasons, I find § 154(c) carries with it the requirement that the infringing party relied on the patent's original expiration when deciding its course of action. Since Atrix's alleged infringement began long before the beginning of the '721 patent's Delta period, it is unlikely that Atrix relied on its original expiration date when

making investments in and use of the allegedly infringing polymer technology. Given the facts presented to date, the possibility of injunction is, thus, a live issue in this case.

Atrix argues that such a finding creates an unwarranted windfall for TAP. While this may be true, it is the windfall that Congress intended. The URAA was clearly meant to extend the terms of some patent beyond what was previously allowed, a great and unexpected benefit to many patent holders. In the URAA, Congress provided two patent term extension provisions – § 154(a), which applied to patent applications filed after its enactment, and § 154(c), which applied to patents already filed at that time of its enactment. This separate consideration indicates Congress's intent to provide patent holders with the possible benefit of a greater patent term. In other words, Congress could have extended the term for future patent holders only, but it did not. To find that § 154(c) prevents a patent holder from seeking an injunction in a case filed before the Delta period began, concerning infringement that preceded the Delta period, would create an unintended windfall in the opposite and unintended direction as was originally intended.

Atrix's motion for summary judgment declaring injunctive relief unavailable is DENIED.[3]

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: April 22, 2005

---

[3] This opinion applies solely to the availability of injunctions under the URAA.